**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC,
a Delaware Limited Liability Company,
DUNKIN' DONUTS FRANCHISING LLC,
a Delaware Limited Liability Company,
DD IP HOLDER LLC,
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISED SHOPS LLC,
a Delaware Limited Liability Company,
BASKIN-ROBBINS FRANCHISING LLC,
a Delaware Limited Liability Company,
BR IP HOLDER LLC,
a Delaware Limited Liability Company,
DB REAL ESTATE ASSETS I LLC,
a Delaware Limited Liability Company, and
DB REAL ESTATE ASSETS II LLC,
a Delaware Limited Liability Company,

Plaintiffs,

v.

AGAWAM DONUTS, INC.,
a Massachusetts Corporation,
B.E. DONUTS, INC.,
a Massachusetts Corporation,
BELMONT DONUTS, INC.,
a Massachusetts Corporation,
DEREK DONUTS, INC.,
a Massachusetts Corporation,
J.A. DONUTS, INC.,
a Massachusetts Corporation,
JESSICA DONUTS, INC.,
a Massachusetts Corporation,
JNS COMMISSARY, INC.,
a Massachusetts Corporation,
LORI DONUTS, INC.,
a Massachusetts Corporation,
LPJ DONUTS, INC.,
a Massachusetts Corporation,
ROCKY DONUTS, INC.,
a Massachusetts Corporation,
SPRINGFIELD DONUTS, INC.,

| | |
|---|---|
| a Massachusetts Corporation, | ) |
| SUPERMARKET DONUTS, INC., | ) |
| a Massachusetts Corporation, | ) |
| WEST SIDE DONUTS, INC., | ) |
| a Massachusetts Corporation, | ) |
| FLETCHER DONUTS, LLC, | ) |
| a Florida Limited Liability Company, | ) |
| JOHN SALEMA, | ) |
| a resident of Massachusetts, | ) |
| JESSICA SALEMA, | ) |
| a resident of Massachusetts, | ) |
| DEREK SALEMA, | ) |
| a resident of Massachusetts, | ) |
| PETER MARTINS, | ) |
| a resident of Massachusetts, | ) |
| LORI MARTINS, | ) |
| a resident of Massachusetts, and | ) |
| ALEXANDER DASILVA, | ) |
| a resident of Massachusetts, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

This case arises from a pervasive scheme by Defendants to deprive their employees of overtime wages in violation of the Fair Labor Standards Act and applicable state law. As part of their scheme, Defendants, who own approximately 50 Dunkin' Donuts and Baskin-Robbins franchises in Massachusetts and Florida, unlawfully used the identities of former employees in order to mask the overtime work performed by their current employees. These actions constitute violations of the Fair Labor Standards Act, the Identity Theft and Assumption Deterrence Act, and applicable state law. As a result of their actions, Defendants committed tax fraud by failing to pay all payroll taxes due. Moreover, Defendants have hired numerous individuals who were not authorized to work in the United States in violation of the Federal Immigration and Nationality Act.

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' failure to comply with the "obey all laws" provisions in their Franchise Agreements. Plaintiffs recently terminated Defendants' Franchise Agreements based on their conduct. Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## PARTIES

1. Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts LLC and Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised Restaurants LLC. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated on or after May 26, 2006 are in the name of Dunkin' Donuts Franchising LLC. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts

franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3. Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

4. Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-Robbins USA LLC and Baskin-Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Baskin-Robbins Franchise Agreements dated prior to May 26, 2006 have been assigned to Baskin-Robbins Franchised Shops LLC. It is in the business of franchising independent businesspersons to operate Baskin-Robbins shops throughout the United States. Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior

accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

5. Plaintiff Baskin-Robbins Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Baskin-Robbins Franchise Agreements dated on or after May 26, 2006 are in the name of Baskin-Robbins Franchising LLC. It is in the business of franchising independent businesspersons to operate Baskin-Robbins shops throughout the United States. Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

6. Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Unless otherwise specified, Baskin-Robbins Franchised Shops LLC, Baskin-Robbins Franchising LLC, and BR IP Holder LLC are collectively referred hereinafter as "Baskin-Robbins" or "Baskin."

7. Dunkin' and Baskin operate as separate corporations. However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

8. Plaintiff DB Real Estate Assets I LLC, successor-in-interest to certain assets of Third Dunkin' Donuts Realty, LLC and Third Dunkin' Donuts Realty, Inc. ("DB Real Estate

Assets I"), is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DB Real Estate Assets is a wholly-owned subsidiary of Dunkin' Donuts and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

9. Plaintiff DB Real Estate Assets II LLC, successor-in-interest to certain assets of Third Dunkin' Donuts Realty, LLC and Third Dunkin' Donuts Realty, Inc. ("DB Real Estate Assets II"), is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DB Real Estate Assets is a wholly-owned subsidiary of Dunkin' Donuts and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' Donuts to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

10. Defendant Agawam Donuts, Inc. ("Agawam Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Agawam, Massachusetts. Defendant Agawam Donuts was the owner of Dunkin' Donuts shops located at 12 Springfield Street, Agawam, Massachusetts, pursuant to a Franchise Agreement dated June 18, 2001, at 152 Silver Street, Agawam, Massachusetts, pursuant to a Franchise Agreement dated March 22, 1999, and at 6 North Westfield Street, Feeding Hills, Massachusetts, pursuant to a Franchise Agreement dated March 10, 2007.

11. Defendant B.E. Donuts, Inc. ("B.E. Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant B.E. Donuts was the owner of Dunkin' Donuts shops located at 1218 State Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated March 25, 2003, at 694

Page Boulevard, Springfield, Massachusetts, pursuant to a Franchise Agreement dated January 29, 2003, at 1211 East Columbus Avenue, Springfield, Massachusetts, pursuant to a Franchise Agreement dated February 24, 2003, and at 273 Hancock Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated March 4, 2004. Defendant B.E. Donuts was the owner of a Dunkin' Donuts and Baskin-Robbins combo shop located at 1600 Northampton Street, Holyoke, Massachusetts, pursuant to a Franchise Agreement dated March 4, 2004.

12. Defendant Belmont Donuts, Inc. ("Belmont Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Shrewsbury, Massachusetts. Defendant Belmont Donuts was the owner of a Dunkin' Donuts shop located at 568 Belmont Avenue, Springfield, Massachusetts, pursuant to a Franchise Agreement dated July 18, 2006.

13. Defendant Derek Donuts, Inc. ("Derek Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant Derek Donuts was the owner of Dunkin' Donuts shops located at 470 Burnett Road, Chicopee, Massachusetts, pursuant to a Franchise Agreement dated January 9, 2002, at 636 Main Street, Holyoke, Massachusetts, pursuant to a Franchise Agreement dated August 22, 2006, at 2068 Riverdale Street, West Springfield, Massachusetts, pursuant to a Franchise Agreement dated January 9, 2002, and at 312 College Street, Amherst, Massachusetts, pursuant to a Franchise Agreement dated July 3, 2002.

14. Defendant J.A. Donuts, Inc. ("J.A. Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Springfield, Massachusetts. Defendant J.A. Donuts was the owner of Dunkin' Donuts shops located at 805 East Main Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated October 29, 2001, and at

1780 Main Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated July 23, 2001.

15. Defendant Jessica Donuts, Inc. ("Jessica Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Springfield, Massachusetts. Defendant Jessica Donuts was the owner of Dunkin' Donuts shops located at 260 Cottage Street, Unit 1, Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 10, 1998, at 1287 Page Boulevard, Springfield, Massachusetts, pursuant to a Franchise Agreement dated July 7, 1999, at 570 Sumner Avenue, Springfield, Massachusetts, pursuant to a Franchise Agreement dated May 10, 1999, and at 27 Montgomery Street, Chicopee, Massachusetts, pursuant to a Franchise Agreement dated February 10, 2000. Defendant Jessica Donuts was the owner of a Dunkin' Donuts and Baskin-Robbins combo shop located at 2144 Boston Road, Wilbraham, Massachusetts, pursuant to a Franchise Agreement dated August 19, 2004.

16. Defendant JNS Commissary, Inc. ("JNS Commissary") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant JNS Commissary was the owner of a Dunkin' Donuts shop located at 260 Cottage Street – Unit 2, Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 10, 1998.

17. Defendant Lori Donuts, Inc. ("Lori Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Springfield, Massachusetts. Defendant Lori Donuts was the owner of Dunkin' Donuts shops located at 397 College Highway, Southwick, Massachusetts, pursuant to a Franchise Agreement dated April 8, 2003, at 1333 Westfield Street, West Springfield, Massachusetts, pursuant to a Franchise Agreement dated September 6, 1995, at 751 Meadow Street, Chicopee, Massachusetts, pursuant to a

Franchise Agreement dated February 12, 1996, at 1500 Main Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated July 16, 2001, at 4 Harding Avenue, Ludlow, Massachusetts, pursuant to a Franchise Agreement dated April 3, 1996, at 464 Breckwood Boulevard, Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 18, 1997, at 953 Front Street, Chicopee Massachusetts, pursuant to a Franchise Agreement dated July 2, 1997, at South Hadley Shopping Center, Newton Street, South Hadley, Massachusetts, pursuant to a Franchise Agreement dated October 27, 1997, and at 1037 St. James Avenue, Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 28, 2000. Defendant Lori Donuts was the owner of Dunkin' Donuts and Baskin-Robbins combo shops located at 1918 Wilbraham Road, Springfield, Massachusetts, pursuant to a Franchise Agreement dated June 6, 2003 and at 55 Maple Street, East Longmeadow, Massachusetts, pursuant to a Franchise Agreement dated July 8, 2003.

18. Defendant LPJ Donuts, Inc. ("LPJ Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant LPJ Donuts was the owner of Dunkin' Donuts shops located at 175 University Drive, Amherst, Massachusetts, pursuant to a Franchise Agreement dated October 17, 2006, at 711 Bliss Road, Longmeadow, Massachusetts, pursuant to a Franchise Agreement dated April 19, 2005, at 1236 Main Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 21, 2005, and at 326 College Highway, Southwick, Massachusetts, pursuant to a Franchise Agreement dated August 16, 2005.

19. Defendant Rocky Donuts, Inc. ("Rocky Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant Rocky Donuts was the owner of Dunkin' Donuts shops located at 119 Boston Road,

Springfield, Massachusetts, pursuant to a Franchise Agreement dated September 18, 2000, at 3 Allens Street, Hampden, Massachusetts, pursuant to a Franchise Agreement dated September 24, 2001, and at 1122 Bay Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated June 26, 2003.

20. Defendant Springfield Donuts, Inc. ("Springfield Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Springfield, Massachusetts. Defendant Springfield Donuts was the owner of a Dunkin' Donuts shop located at 1190 Boston Post Road, Springfield, Massachusetts, pursuant to a Franchise Agreement dated August 16, 2005.

21. Defendant Supermarket Donuts, Inc. ("Supermarket Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in Ludlow, Massachusetts. Defendant Supermarket Donuts was the owner of Dunkin' Donuts shops located at 1600 Boston Post Road, Springfield, Massachusetts, pursuant to a Franchise Agreement dated October 28, 2002, at 1277 Liberty Street, East Springfield, Massachusetts, pursuant to a Franchise Agreement dated July 22, 2002, and at 440 Russell Street, Hadley, Massachusetts, pursuant to a Franchise Agreement dated September 17, 2002.

22. Defendant West Side Donuts, Inc. ("West Side Donuts") is a Massachusetts corporation and, upon information and belief, its principal place of business is in West Springfield, Massachusetts. Defendant West Side Donuts was the owner of Dunkin' Donuts shops located at 44 Park Street, West Springfield, Massachusetts, pursuant to a Franchise Agreement dated April 5, 2002, at 668 Liberty Street, Springfield, Massachusetts, pursuant to a Franchise Agreement dated December 19, 1997, at 95 West Street, Chicopee, Massachusetts,

pursuant to a Franchise Agreement dated February 5, 1999, and at 85 Memorial Avenue, West Springfield, Massachusetts, pursuant to a Franchise Agreement dated September 25, 2002.

23. Defendant Fletcher Donuts, LLC ("Fletcher Donuts") is a Florida corporation and, upon information and belief, its principal place of business is in Tampa, Florida. Defendant Fletcher Donuts was the owner of Dunkin' Donuts shops located at 330 West Fletcher Avenue, Tampa, Florida, pursuant to a Franchise Agreement dated January 16, 2007 and at 6332 North Dale Mabry Highway, Tampa, Florida, pursuant to a Franchise Agreement dated January 29, 2007. Defendant Fletcher Donuts was the owner of Dunkin' Donuts and Baskin-Robbins combo shops located at 7004 Dale Mabry Highway, Tampa, Florida, pursuant to a Franchise Agreement dated January 29, 2007, at 13179 Cortez Boulevard, Spring Hill, Florida, pursuant to a Franchise Agreement dated January 12, 2007, and at 1185 South Broad Street, Brooksville, Florida, pursuant to a Franchise Agreement dated January 12, 2007.

24. Defendant John Salema is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant John Salema is an officer, member, and/or shareholder of Agawam Donuts, Belmont Donuts, Derek Donuts, J.A. Donuts, Jessica Donuts, JNS Commissary, Lori Donuts, Rocky Donuts, Springfield Donuts, Supermarket Donuts, and West Side Donuts, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

25. Defendant Jessica Salema is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant Jessica Salema is an officer, member, and/or shareholder of B.E. Donuts, LPJ Donuts, Springfield Donuts, Supermarket Donuts, and Fletcher Donuts, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

26. Defendant Derek Salema is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant Derek Salema is an officer, member, and/or shareholder of Fletcher Donuts, and personally guaranteed the obligations of the foregoing entity pursuant to an executed personal guarantee.

27. Defendant Peter Martins is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant Peter Martins is an officer, member, and/or shareholder of B.E. Donuts, LPJ Donuts, Springfield Donuts, Supermarket Donuts and Fletcher Donuts, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

28. Defendant Lori Martins is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant Lori Martins is an officer, member, and/or shareholder of B.E. Donuts, LPJ Donuts, Springfield Donuts, Supermarket Donuts, and Fletcher Donuts, and personally guaranteed the obligations of the foregoing entities pursuant to executed personal guarantees.

29. Defendant Alexander DaSilva is a natural person and a citizen and resident of the Commonwealth of Massachusetts. Defendant Alexander DaSilva is an officer, member, and/or shareholder of J.A. Donuts, and personally guaranteed the obligations of the foregoing entity pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

30. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

31. This Court has *in personam* jurisdiction over Defendants because they conduct business in this District, the majority of them are residents of this District, and/or the events giving rise to Plaintiffs' claims occurred in this district.

32. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Dunkin' Donuts System

33. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

34. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

35. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

36. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

37. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $1,000,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-five years. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

38. Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature

Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

39. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

**The Baskin-Robbins System**

40. Baskin-Robbins is the franchisor of the Baskin-Robbins system.

41. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

42. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

43. The Baskin-Robbins trademarks are utilized in interstate commerce.

44. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

45. Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and 3,000 stores outside of the United States. In the more than fifty years since the Baskin-Robbins system began, millions of consumers have been served in Baskin-Robbins stores.

46. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

**Defendants' Obligations Under the Franchise Agreements**

47. Under the terms of the Franchise Agreements, Defendants agreed they would use Dunkin' Donuts' and Baskin-Robbins' proprietary marks, including, but not limited to, their trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreement. Franchise Agreement §§ 7.0 and 7.1.

48. Defendants agreed that any unauthorized use of the Dunkin' and Baskin-Robbins proprietary marks during or after the expiration or earlier termination of the agreement would constitute an incurable default causing irreparable harm subject to injunctive relief. Franchise Agreement §§ 7.1, 9.4.2 and 9.4.3.

49. Defendants agreed that they would comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities. Franchise Agreement § 5.1.7.

50. Defendants agreed not to use the franchised premises for any illegal or unauthorized purpose. Franchise Agreement § 9.0.3.

51. Defendants agreed that it would be a default under the Franchise Agreements if they were convicted of or pled guilty or "nolo contendere" to a felony, crime involving moral turpitude, or any other crime or offense that Plaintiffs believed is injurious to Plaintiffs' systems, proprietary marks or the goodwill associated therewith, or if Plaintiffs had proof that Defendants had committed such a felony, crime or offense. Franchise Agreement § 9.0.2.

52. Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' and Baskin-Robbins' proprietary marks and the Dunkin' Donuts and Baskin-Robbins systems. Franchise Agreement § 8.0.1.

53. Defendants agreed to keep full, complete, and accurate books and records in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Plaintiffs. Franchise Agreement § 5.2.

54. The Franchise Agreements each contain a "cross-default" provision, which states in Paragraph 9.0.4 that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ." Franchise Agreement § 9.0.4.

55. Thus, the termination of one Franchise Agreement constitutes grounds for the termination of all of the other Franchise Agreements, and each of them individually.

56. Under Paragraph 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under any paragraph designated in 9.0.1 through 9.0.4 or if they otherwise commit an act of fraud with respect to their obligations under the Agreement. Moreover, as a matter of law, no cure period is available for such defaults.

57. Defendants agreed that, upon the termination of the Franchise Agreements, their rights to use Plaintiffs' proprietary marks and systems would cease, and that they would promptly pay Plaintiffs any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Plaintiffs as a result of the Defendants' default(s). Franchise Agreement §§ 9.3, 9.4, 9.4.1 and 9.4.2.

58. Defendants agreed that any unauthorized use of Dunkin' Donuts' and Baskin-Robbins' proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' Donuts and Baskin-Robbins and would constitute willful trademark infringement. Franchise Agreement § 9.4.3.

**The Subleases**

59. Defendant Fletcher Donuts became a lessee of DB Real Estate Assets I for the shop located at 330 West Fletcher Avenue, Tampa, Florida pursuant to an Agreement to Transfer Unit by the Sale of Assets dated January 16, 2007, through which it acquired all right, title and interest in a sublease dated August 25, 1999. Defendant Fletcher Donuts became a lessee of DB Real Estate Assets I for the shop located at 13179 Cortez Boulevard, Spring Hill, Florida pursuant to an Agreement to Transfer Unit by the Sale of Assets dated January 12, 2007, through which it acquired all right, title and interest in a sublease dated November 10, 2003. Defendant Fletcher Donuts became a lessee of DB Real Estate Assets I for the shop located at 7004 Dale Mabry Highway, Tampa, Florida pursuant to an Agreement to Transfer Unit by the Sale of Assets dated January 29, 2007, through which it acquired all right, title and interest in a sublease dated November 22, 2004. Defendant Fletcher Donuts became a lessee of DB Real Estate Assets II for the shop located at 6332 North Dale Mabry Highway, Tampa, Florida pursuant to an Agreement to Transfer Unit by the Sale of Assets dated January 29, 2007, through which it

acquired all right, title and interest in a sublease dated October 1, 2006. Defendant West Side Donuts became a lessee of DB Real Estate Assets II for the shop located at 44 Park Street, West Springfield, Massachusetts pursuant to a sublease dated June 4, 1986 (collectively the "Subleases"). The Subleases provide that DB Real Estate Assets I and DB Real Estate Assets II have the right to terminate the Subleases if the corresponding Franchise Agreement for the shops is terminated for any reason. Further, the Subleases give DB Real Estate Assets I and DB Real Estate Assets II the right, upon termination, to enter upon the premises and repossess the same and expel Defendants. Defendants further agreed that upon the termination of the Subleases they would promptly pay DB Real Estate Assets I and DB Real Estate Assets II any damages, costs, and expenses, including reasonable attorneys' fees, incurred by DB Real Estate Assets I or DB Real Estate Assets II as a result of the termination.

**THE STORE DEVELOPMENT AGREEMENTS**

60. Plaintiffs and Defendants Fletcher Donuts, LLC , LPJ Donuts, Inc., and Jessica Salema, Peter Martins and Lori Martins, executed Multi-Unit Store Development Agreements dated April 22, 2003, January 30, 2003, and May 28, 2004, respectively, and Defendant Fletcher Donuts, LLC executed a Single Unit Store Development Agreement dated January 22, 2007 (collectively, the "SDAs"), pursuant to which Defendants were to develop Dunkin' Donuts and Baskin-Robbins franchises within designated geographic areas. Under the SDAs, Defendants agreed that their right to develop the units was contingent upon their not being in default of the SDAs or any Franchise Agreements they may have with Plaintiffs. By engaging in the breaches of the Franchise Agreements noted herein, Defendants breached the SDAs.

**DEFENDANTS' DEFAULTS**

61. Plaintiffs recently discovered that Defendants breached their Franchise Agreements by the conduct described below.

62. In violation of the Fair Labor Standards Act and applicable state law, Defendants have failed to pay numerous employees at overtime wage rates due for work in excess of 40 hours per week.

63. As part of their scheme and in violation of the Identity Theft and Assumption Deterrence Act and applicable state law, Defendants had current employees who worked over forty hours in a week use the name and social security number of former employees of Defendants in order to mask the fact that the they were working in excess of forty hours and were entitled to overtime wages. Defendants also falsified employees' time records by carrying overtime hours for employees into the following week in order to evade paying overtime wages.

64. Defendants have participated in a fraudulent scheme to avoid paying federal and state payroll taxes due and owing to the IRS and the Massachusetts Department of Revenue in violation of employee income tax withholding laws and regulations.

65. Defendants have knowingly and purposefully breached the Franchise Agreements by, without limitation, violating applicable federal immigration and employment laws, at a minimum, by knowingly hiring and continuing to employ unauthorized individuals in their shops.

66. Defendants knowingly accepted false identification documents from certain of their employees as a part of the hiring process.

67. Hiring or continuing to employ unauthorized individuals violates the Federal Immigration and Nationality Act, 8 U.S.C. §§ 1324a(a)(1) and (2).

68. Recruiting, harboring, and/or concealing unauthorized individuals in the United States violates 8 U.S.C. § 1324.

69. Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements, Subleases, and SDAs, on August 6, 2007, Plaintiffs sent to Defendants a Notice of Default and Termination. The Notice terminated the Franchise Agreements, Subleases, and SDAs, effective immediately upon Defendants' receipt of the Notice, stated the grounds for termination, and requested that Defendants immediately comply with their post-termination obligations as set forth in the agreements.

**COUNT I**
**(Breach of Contract – Franchise Agreements)**

70. The allegations of paragraphs 1 through 69 are hereby incorporated by reference.

71. The conduct described herein constitutes breaches of the contractual obligations contained in the Franchise Agreements.

72. These breaches constitute grounds for terminating the agreements.

73. As a result of Defendants' actions, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT II**
**(Breach of Contract – SDAs)**

74. The allegations of paragraphs 1 through 73 are hereby incorporated by reference.

75. The conduct described herein constitutes breaches of the contractual obligations contained in the SDAs.

76. These breaches constitute grounds for terminating the SDAs.

77. As a result of Defendants' actions, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT III**
**(Breach of Contract – Subleases)**

78. The allegations of paragraphs 1 through 77 are hereby incorporated by reference.

79. The conduct described herein constitutes breaches of the contractual obligations contained in the Subleases.

80. These breaches constitute grounds for terminating the Subleases.

81. As a result of Defendants' actions, DB Real Estate Assets I and DB Real Estate Assets II have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT IV**
**(Trademark Infringement)**

82. The allegations of paragraphs 1 through 81 are hereby incorporated by reference.

83. The use in commerce of the Dunkin' and Baskin-Robbins trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's and Baskin-Robbins' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' and Baskin-Robbins. Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names infringes Dunkin's and Baskin-Robbins' exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

84. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

85. As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT V**
**(Unfair Competition)**

86. The allegations of paragraphs 1 through 85 are hereby incorporated by reference.

87. The use in commerce of Dunkin's and Baskin-Robbins' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' and Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

88. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

89. As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT VI**
**(Trade Dress Infringement)**

90. The allegations of paragraphs 1 through 89 are hereby incorporated by reference.

91. The Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and "Baskin-Robbins" appear

in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts and Baskin-Robbins use for the doughnut and ice cream shops operated by Dunkin' Donuts and Baskin-Robbins licensees.

92. The use by Defendants of trade dress that is identical to the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts and Baskin-Robbins shops operated by Dunkin' Donuts and Baskin-Robbins licensees. Such adoption of Dunkin' Donuts and Baskin-Robbins trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

93. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

94. As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray that this Court:

a. Enter a declaratory judgment order stating that the conduct of Defendants violates the terms of the Franchise Agreements, Subleases, and SDAs, and constitutes grounds for terminating the Franchise Agreements, Subleases, and SDAs;

b. Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements, Subleases, and SDAs by Defendants;

c. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements, Subleases, and SDAs as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

d. Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's and Baskin-Robbins' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin' and Baskin-Robbins;

e. Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, Subleases, and SDAs, Lease Riders, and Lease Option Agreements;

f. Award Dunkin' and Baskin-Robbins judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

g. Award Dunkin' and Baskin-Robbins prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

h. Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

i. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

j. Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Robert A. Murphy*

Robert A. Murphy (Bar No. 363700)
Donna Brewer MacKenna (Bar No. 545254)
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, Massachusetts 02210
Telephone: (617) 426-5900
Facsimile: (617) 426-8810
rmurphy@casneredwards.com
mackenna@casneredwards.com

Robert L. Zisk
David E. Worthen
Stephen J. Vaughan
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, DC 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250

Dated: August 6, 2007

*Attorneys for Plaintiffs*